UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:16-cv-00181-GCM

| | |
|---|---|
| **NATALIE S. COONEY,** | ) |
| Plaintiff, | ) |
| Vs. | ) ORDER |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Judgment on the Pleadings and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.    Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter, Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals Council.

Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, *supra*. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays v. Sullivan*, *supra*.

## IV. Substantial Evidence

## A. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. The undersigned finds that it is.

## B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5) Whether the claimant is able to do any other work, considering his RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v). In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

**C.     The Administrative Decision**

In rendering the decision, the ALJ applied the above five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 27, 2008, the date her alleged disability began. (Tr. 269). At step two, the ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease ("COPD"), substance abuse disorder, depression, and anxiety. (Tr. 269). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (Tr. 269).

Before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform medium work, restricting her to lifting no more than 50 pounds at a time and lifting/carrying up to 25 pounds frequently. She was also limited to no exposure to temperature extremes, high humidity, concentrated pulmonary irritants, and work

hazards. The ALJ further limited Plaintiff to simple, repetitive tasks, occasional contact with the general public, no work in a team setting, and no fast-paced production environment. (Tr. 271-74).

At step four, the ALJ found that Plaintiff could no longer perform her past relevant work. (Tr. 274). At step five, the ALJ found that, based on Plaintiff's age, education, work experience, and RFC, as well as testimony from a vocational expert ("VE"), Plaintiff could perform jobs existing in significant numbers in the national economy, including polisher, hospital cleaner, and a laboratory equipment cleaner. (Tr. 275). As a result, the ALJ found that Plaintiff was not disabled under the Social Security Act. (Tr. 275).

### D. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error: (1) whether the ALJ erred in failing to find that Plaintiff's psychiatric impairments meet Listing 12.04; (2) whether the ALJ erred in finding that Plaintiff has the RFC to perform a reduced range of medium work, thereby misapplying the medical-vocational guidelines; (3) whether the ALJ erred in failing to find that Plaintiff's degenerative disc disease is a severe impairment. Plaintiff's assignments of error will be discussed seriatim.

#### 2. First Assignment of Error

To meet Listing 12.04 — and thereby end the entire process with a final finding of disabled — Plaintiff must satisfy both paragraphs A and B or just satisfy paragraph C. *See* Listing 12.04. The ALJ found that Plaintiff did satisfy paragraph A, but not B or C. (Tr. 270). Plaintiff argues that that determination, specifically in regards to paragraph B, is in error. That paragraph, in effect at the time of the ALJ's decision, read as follows:

> B. [The mental illness results] in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration

*Id.*

After reviewing the evidence, the ALJ found no restriction in Plaintiff's activities of daily life; moderate difficulties in maintaining concentration, persistence, and pace; and moderate difficulties in social functioning. (Tr. 270). With regard to the activities of daily life, the ALJ pointed to Plaintiff's ability "to take care of her personal hygiene, cook, and do household chores" as proof of Plaintiff's lack of restrictions on daily life (Tr. 270). Substantial evidence supports this finding as Ms. Cooney and her stepmother provided statements indicating no problems with

attending to personal needs (Tr. 518, 534, 561), and Ms. Cooney testified at her hearing that she could drive a car, attend to her personal needs, and help out around the house. (Tr. 293-294.)

The records supports the finding of moderate difficulties with social functioning as well. (Tr. 270.) Here, there is evidence supporting the ALJ's statement that Ms. Cooney spent most of her time at home watching television, which, in turn, supports moderate limitations in this area. (Tr. 293, 517, 533.) In addition, the ALJ discussed in his decision Ms. Cooney's hearing testimony that she generally got along well with others. (Tr. 272 (citing Tr. 292).) Furthermore, reports from Ms. Cooney and her stepmother show that she does not have more than moderate limitations in this area. (Tr. 521 (stating that Ms. Cooney talks on the phone with and visits friends), 537-538 (same).)

The record also supports the ALJ's conclusion that Ms. Cooney has only moderate limitations in concentration, persistence, and pace. (Tr. 270.) Here, the ALJ pointed out that Ms. Cooney was able to maintain the concentration necessary to drive and watch television. (Tr. 270.) In addition, the record contains opinion evidence that Ms. Cooney's difficulties in this area were only "mild," indicating that the ALJ appeared to give Ms. Cooney the benefit of the doubt on this issue by finding

"moderate" difficulties and undermining any claim of marked limitations. (Tr. 318, 349.)

Finally, the record supports the ALJ's conclusion that Ms. Cooney did not have repeated episodes of decompensation as described in the Listing. To be sure, there is evidence that Ms. Cooney received inpatient treatment for depression and substance abuse in June 2012, June 2014, and September 2015, but those episodes were not of extended duration because they did not last more than two weeks, and they did not occur with the frequency required in the Listing—three episodes of extended duration within one year. (Tr. 617 (admission date of June 9, 2012 followed by discharge on June 12, 2012); 979 and 1021 (admission dates of June 17, 2014 and June 21, 2014, discharge on June 25, 2014); 1050 (admission on September 6, 2015, discharge on September 10, 2015).) The ALJ correctly found that Ms. Cooney did not meet the requirement for episodes of decompensation, meaning she did not meet the paragraph B criteria. (Tr. 270.)

Plaintiff does not rebut these factual determinations, but instead argues that the ALJ erred in failing to specifically address the significance of her Global Assessment of Functioning ("GAF") scores. As this Court has held, however, the mere lack of discussion regarding GAF scores is not reversible error. *Mitchell v. Astrue*, No. 2:11-cv-56-MR, 2013 WL 678068, at *8 (W.D.N.C. Feb. 25, 2013)

(citation omitted). As a general matter, GAF scores are a snapshot of an individual's condition at the time of the rating; they do not purport to describe functioning over time. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders ("DSM-IV"), at 33 (4th ed. 1994) (explaining that, in most cases, "ratings on the GAF Scale should be for the current period (i.e. the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care"); *see also Powell v. Astrue*, 927 F. Supp. 2d 267, 273 (W.D.N.C. 2013) (citing *Fowler v. Astrue*, Civil No. 1:10cv123, 2011 WL 5974279, at *3 (W.D.N.C. Nov. 29, 2011) (defining GAF scores as "a mere snapshot of functioning at any given moment" not indicative of how an individual functions "on an ongoing basis"). As a result, a GAF score is not dispositive of disability, and the score has no direct legal or medical correlation to the severity requirements of SSA's regulations. *See*, *e.g.*, *Carringer v. Colvin*, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *8-9 (W.D.N.C. Mar. 27, 2014).

The ALJ decision at issue in this case contains the required discussion of the records that included GAF scores. The ALJ discussed records showing that Ms. Cooney received inpatient treatment for "for bipolar affective disorder and drug and alcohol abuse" in June 2014. (Tr. 273 (citing 979-1048).) Among those records was a GAF score of 20. (Tr. 982.) The ALJ's decision did not need to make specific

mention of the GAF score—only discuss the record generally, which the ALJ decision here did. (Tr. 273.) The same is true of the other GAF scores Ms. Cooney cites in her brief: while the ALJ did not mention them specifically, he included in the decision a generalized discussion both of those records in particular and the evidence as a whole. (Tr. 271-274.) The ALJ properly evaluated the evidence in the record, including the evidence that contained GAF scores.

### 3. Second Assignment of Error

Plaintiff next argues that the ALJ erred in finding that Plaintiff has the RFC to perform a reduced range of medium work, thereby misapplying the medical-vocational guidelines. The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. Social Security Ruling 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Plaintiff primarily relies upon her testimony as proof that she cannot perform the range of medium work. As part of the disability determination process, an ALJ

must evaluate a claimant's subjective allegations about his/her symptoms, including pain, and explain the weight given to those allegations. *See Craig v. Chater*, 76 F.3d 585, 588 (4th Cir. 1996). The two-part analysis on this issue is described in 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling 16-3P, 2016 WL 1119029, at *1 (2016) ("SSR 16-3p"). The ALJ must first decide whether a claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. If so, then the ALJ must proceed to the second step and evaluate all of the evidence in the record under several regulatory factors, including: medical signs and laboratory findings, the individual's own statements about his/her symptoms, any statements and other information provided by treating or examining physician, psychologists, and others about the individual's symptoms and how those symptoms affect the individual, and any other evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *See also* SSR 16-3p, 2016 WL 1119029, at *7. The evidence showing these factors may include both objective and subjective evidence. *See* SSR 16-3p, 2016 WL 1119029, at *4 (stating that the adjudicator will "examine the entire case record," including the objective medical evidence and statements by the claimant, the claimant's treating sources, and certain "other persons"). SSR 16-3p also requires an ALJ to discuss "specific reasons for the weight given to the individual's symptoms." *Id.* at *9. Because the ALJ is in the best position to observe

a claimant's demeanor, the ALJ's observations regarding subjective allegations are entitled to great weight. *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984).

Here, the ALJ discussed the Plaintiff's relevant testimony and why he determined it was not entirely credible, stating:

> I find that the claimant's medically determinable impairments could reasonably be expected to cause a few of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . . Although I accept the claimant's allegations that her symptoms limited her mental and functional capacity to a mild degree, she is not credible to the extent that her capacity was so limited that she was unable to engage in substantial gainful activity consistent with the residual functional capacity that I have assessed.

(Tr. 272). The ALJ continues by explaining which evidence supports his decision, including the hospital reports and treatment notes. (Tr. 272-73). In response to these findings, Ms. Cooney points to evidence that, she claims, supports her subjective statements. The ALJ reviewed all of the evidence in the record, including the evidence cited in Ms. Cooney's brief. He properly concluded that Ms. Cooney's condition, while severe, did not preclude all work. (Tr. 274.) The Court finds that the ALJ's specific discussion of the Plaintiff's credibility in regards to her testimony of symptoms is supported with substantial evidence.

Plaintiff also argues that it was improper for the ALJ to rely upon Plaintiff's activities of daily life ("ADL") in formulating her RFC as they do not properly show Plaintiff's ability to perform a job for eight hours a day, five days a week. This argument is flawed because the ALJ relies on much more than Plaintiff's ADL in formulating her RFC. Some examples of other evidence on which the ALJ based his decision includes hospital visits, x-ray images, and psychologist reports. (Tr. 272-74).

### 4. Third Assignment of Error

Plaintiff's final assignment of error is that the ALJ erred in failing to find that Plaintiff's degenerative disc disease is a severe impairment. An impairment is "severe" when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c). Conversely, an impairment that does not significantly limit an individual's physical or mental ability to do basic work activities is non-severe. *See Id.*; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999) (stating that impairments are not severe unless they have more than a minimal effect on claimant's ability to work); *Ellis v. Colvin*, No. 2:12-cv-18-MOC-DLH, 2013 WL 3976623, at *7 (W.D.N.C. Aug. 2, 2013) (citing 20 C.F.R. § 404.1520(c)) and finding a diagnosis of depression

did not prove a severe impairment in the absence of evidence that depression "had more than a minimal effect on [claimant]'s ability to work").

Here, the ALJ reviewed the relevant evidence in full and correctly decided that Ms. Cooney's back impairment was not severe because it "no more than minimally affects her ability to perform work-related activity . . . ." (Tr. 296.) In support of this finding, the ALJ acknowledged symptoms Ms. Cooney reported in May 2013 as well as an x-ray from that time showing "only minor degenerative changes." (Tr. 269 (citing Tr. 759, 762).) The treatment notes from that visit show that Ms. Cooney's range of motion was normal, with some tenderness, and there were no other significant findings. (Tr. 760-761.) The ALJ also discussed other evidence in the record showing that Ms. Cooney's back impairment caused no significant limitations in her ability to work. For example, he discussed records showing that Ms. Cooney returned to the emergency room on May 18, 2009, for treatment of back pain. (Tr. 273 (citing Tr. 931).) There, the ALJ noted that Ms. Cooney reported pain with range of motion testing, but her spinal alignment was normal, there was no tenderness to palpation, and straight leg raise tests were negative. (Tr. 1000.) Furthermore, there is no opinion evidence in the record attributing any work-related limitations to upper or lower back pain. (Tr. 308, 310-311, 337, 351.)

In support of her claim, Ms. Cooney points to evidence that she went to the emergency room several times for treatment of acute back pain. (Pl. Br. 12.) However, none of those records contain evidence of an ongoing condition that caused significant limitations. Rather, on each occasion, an examination revealed few, if any significant findings. For example, on May 28, 2016, Ms. Cooney complained of back pain, but all range of motion testing was normal, as were gait and strength; she did have muscle tenderness, but none over her vertebrae. (Tr. 235.) Similarly, on April 30, 2009, Ms. Cooney reported back pain that worsened with movement, but an examination revealed normal range of motion testing, strength, sensation, and reflexes. (Tr. 688.) On February 6, 2010, Ms. Cooney reported back pain when "she felt a 'pop'" while changing sheets on a bed, but again findings were minimal and she was diagnosed with a muscle strain. (Tr. 707.) Similar examination results appear on every other occasion Ms. Cooney cited in her brief, several of which the ALJ discussed in his decision. (Tr. 761-762 (reports of back pain, but normal range of motion and strength with no tenderness, swelling, or deformity; noting "no acute findings" on lumbar spine x-ray and only "slight" narrowing of disc space at a single spinal level); 931-932 (reports of back pain and signs of muscle tenderness, but intact sensation, normal reflexes, "ambulatory"); 940-941 (reports of generalized achiness following a motor vehicle accident with "severe narrowing" at

two cervical spine levels, but normal range of motion throughout, no tenderness); 1000-1002 (painful range of motion testing on May 18, 2009, diagnosed with lumbar strain, no positive straight leg raises or neurological findings, no tenderness noted).) Ms. Cooney also cites evidence of "severe narrowing" in her cervical vertebrae, but there is no evidence of limitations arising out of those MRI findings—indeed, most of Ms. Cooney's complaints regarding back pain were in her lower back, not her upper back or neck. (Pl. Br. 11-12; Tr. 941.)

The evidence cited in support of Plaintiff's claims does not provide a basis for disturbing the ALJ's decision. The evidence makes clear that Ms. Cooney's back problems do not amount to a significant impairment because, despite Ms. Cooney's repeated trips to the emergency room, medical findings were consistently normal and would not support a finding of any effects on Ms. Cooney's ability to work.

Accordingly, the ALJ had substantial evidence in his conclusion that Plaintiff's severe disc disease was only a minor impairment, not a severe impairment.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals

that the decision of the ALJ is supported by substantial evidence. *See Richardson v. Perales, supra; Hays v. Sullivan, supra*. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales, supra*, Plaintiff's Motion for Judgment on the Pleadings will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2) the Plaintiff's Motion for Judgment on the Pleadings is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: September 7, 2017

Graham C. Mullen
United States District Judge